UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRELL YHARBROUGH, 592137,

                Petitioner,               Civil Action No. 2:12-CV-15263
                                                 Honorable Lawrence P. Zatkoff

v.

STEVEN RIVARD,

                Respondent.
_____/

OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON
APPEAL IN FORMA PAUPERIS

        This matter is before the Court on Petitioner's pro se request for habeas relief pursuant to 28

U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree

murder, MICH. COMP. LAWS § 750.316, assault with intent to murder, MICH. COMP. LAWS § 750.83,

felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of a firearm during

the commission of a felony (felony-firearm), MICH. COMP. LAWS § 750.227b.  As a result of these

convictions, Petitioner is serving a sentence of concurrent terms of life imprisonment for the

first-degree murder conviction, 20-to-40 years imprisonment for the assault with intent to commit

murder conviction, and 2-to-5 years imprisonment for the felon in possession of a firearm

conviction, to run consecutive with a 2-year term of imprisonment for the felony-firearm conviction.

The petition raises two claims: (1) the trial court erred in instructing the jury on Petitioner's flight

being evidence of consciousness of guilt; and (2) the prosecutor committed multiple acts of

misconduct. The Court will deny the petition because Petitioner's claims do not merit habeas relief.

The Court will also deny Petitioner a certificate of appealability and deny permission to proceed in

forma pauperis on appeal.

BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a shooting that occurred at a party on Ferris Street in Highland Park on April 19, 2008, shortly before 1:00 a.m. When police arrived at the scene, they found Kory Gault dead, having sustained approximately 30 gunshot wounds. Leon Cottrell, who had driven Gault and two females to the party, was found by police in a nearby house severely injured in the shooting.
>
> On the night of the incident, Cottrell had driven Gault, Donyell Fuller and Jocelyn White, to the party on Ferris Street in his Bonneville. After they arrived, Cottrell entered a house party taking place at that location, which later moved outside. Eventually, the four returned to Cottrell's vehicle; Cottrell sat in the driver's seat, Gault sat in the front passenger's seat, and Fuller and White sat in the back seat. Cottrell testified at trial that just as he was about to drive off, he saw defendant, wearing all black, come out from the side of the house. A guy named "Tone" was on the other side of the house, serving what Cottrell described as defendant's lookout. According to Cottrell, after approaching the vehicle, defendant took off his hood, turned his hat backwards so that Cottrell could see him, and slung an AK47 from around his back.
>
> Cottrell testified that after defendant shot the streetlight, defendant then began shooting at the passenger's side of Cottrell's vehicle, striking Cottrell's shoulder. The car started to move in slow motion as Cottrell heard Fuller and White screaming in the back seat. Cottrell climbed out of the window as defendant continued to fire shots, and in the process of hitting the ground he broke his arm. Fuller and White got down on the floor until the shooting stopped, at which point they exited the vehicle and ran away. Cottrell pulled himself to the other side of the street using his unwounded arm. People helped Cottrell into the house where the party had taken place, and where he was eventually found by police and EMS personnel.
>
> Highland Park Police Officer Michael Kumeisha and his partner, Officer Ryan Kalis, were the first to arrive at the scene of the shooting. The officers observed a Pontiac Bonneville slightly off the roadway with a man lying inside, partially hanging out into the street, and a large crowd in panic. The officers could tell that the man inside the vehicle, Gault, was deceased, having incurred multiple bullet wounds. Gault's feet were in the passenger compartment, his body was sprawled over the center

2

console and driver's seat, and his upper body fell out onto the street. The second EMS unit applied a heart monitor to Gault's body to verify that all heart activity had ceased.

Highland Park Police Officer Herbert Alan Fluker, the officer in charge of this case, discovered a purple Plymouth Voyager in an alley near the crime scene while canvassing the area. The vehicle's transmission fluid was leaking and its engine had been punched, indicating that it had been stolen. Officer Fluker also met with Cottrell at Henry Ford Hospital. During this meeting, Cottrell identified defendant, whom he testified he had seen "a bunch of times," as the shooter. Cottrell also stated that, after defendant was done shooting, he dropped the AK47 and someone in the crowd picked it up, however, the police never recovered a gun in this case. Cottrell also told Officer Fluker that Patrick Mason was trying to find him, and that the reason defendant did the shooting was in retaliation for an alleged attempt by Cottrell to shoot Charles Chuckie Mason. Cottrell later refuted this statement at trial. Officer Fluker took a second statement from Cottrell at his home on June 5, 2008, after which Fluker then attempted to locate defendant. Eventually police brought defendant into custody from Seattle on April 22, 2009.

At trial, Dominique Yharbrough, defendant's sister, testified that she saw defendant the morning following the shooting at approximately 10:00 a.m. at her house. They went to Pizza Hut and Cold Stone for their little sister's birthday. In Dominique's opinion, defendant was not acting nervous or unusual that day. She testified that defendant spent the night at her place that evening. She saw him leave the next day by foot toward the bus stop. Dominique testified that she had no knowledge of where her brother was when the shooting occurred. She further testified that she knew that her brother went to Seattle sometime in June, but she did not know any further details about where he was living. After moving to Seattle, defendant stopped calling Dominique regularly or letting the family know his whereabouts.

Dr. Lokman Sung, who performed Gault's autopsy, testified that his cause of death was approximately 30 gunshot wounds and that the manner of death was homicide. Dr. Sung did not find any evidence of close range firing on Gault's skin. Michael Herriotte, a Forensic Technician with the Detroit Police Department, processed the stolen Plymouth Voyager found at the scene. Herriotte and his partner were unable to successfully lift any prints from the vehicle's interior, but did lift one set of prints from the outside passenger side window. Amanda Crooker, who works in the State Police Department's Forensic Science Division as a Latent Print Specialist, received authorization to pull the fingerprint cards of defendant and others for purposes of comparison with the latent lift. She identified the prints as belonging to defendant.

Following closing arguments, the trial court instructed the jury, over the objections of defendant, that the jury could consider defendant's flight from the jurisdiction as evidence of consciousness of guilt. Following his convictions and sentences as

stated, *supra*, this appeal ensued.

*People v. Yharbrough*, No. 295433 (Mich. Ct. App. Feb. 22, 2011).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals, which raised the same claims Petitioner presents in his habeas application. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.*

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals with an additional issue alleging ineffective assistance of counsel. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Yharbrough*, 490 Mich. 859 (2011) (table).

STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the

5

authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

## DISCUSSION

### A. Flight Instruction

Petitioner first claims that the trial court erred in instructing the jury that evidence of Petitioner's flight could be used to show his consciousness of guilt.

The United States Supreme Court has long held that evidence of flight after committing a crime, while not sufficient in and of itself to sustain a conviction, is relevant to establish a defendant's consciousness of guilt. See, e.g., *Allen v. United States*, 164 U.S. 492, 499 (1896); *Alberty v. United States*, 162 U.S. 499, 510-11 (1896); cf. *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000) (suspect's unprovoked flight from police relevant to issue of reasonable suspicion, because "[h]eadlong flight - wherever it occurs - is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.")

In Michigan, "evidence of flight is admissible to support an inference of 'consciousness of guilt' and the term 'flight' includes such actions as fleeing the scene of the crime." *People v. Goodin*,

6

257 Mich. App. 425 (2003) (citing *People v. Coleman*, 210 Mich. App. 1 (1995)).

Here, the evidence showed that after the crime, Petitioner traveled to Seattle and essentially stopped communication with his family in Michigan. While it is true that Petitioner did not leave Michigan until approximately two months after the incident, this time frame corresponded with his identification as the perpetrator by witnesses and the issuance of his arrest warrant.

The trial court, moreover, informed the jury that although a person may run or hide because of a consciousness of guilt, such evidence does not necessarily prove guilt. The court explained that a person may run or hide for innocent reasons as well. The trial court instructed the jury to decide whether the evidence of flight was true and, if true, whether it showed that Petitioner had a guilty state of mind. The instruction on flight therefore did not infuse the trial with such unfairness as to deny Petitioner due process of law, and thus he is not entitled to habeas corpus relief.

B. Prosecutorial Misconduct

Petitioner next claims that the prosecutor committed misconduct by making improper comments during closing argument.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); see also *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, 132 S.Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

7

Petitioner first asserts that the prosecutor vouched for a witness by suggesting that if a person is shot he is more likely to be telling the truth, by stating: "I tell you if I been shot a couple of times, seeing somebody else shot like that, I don't know whether I would be that sharp enough to make those observations to correctly assess the situation."

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted); *See also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of proffering his personal belief - concerning a witness' credibility or in a defendant's guilt - must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

8

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003).

Here, the challenged comment did not amount to improper vouching. The prosecutor merely stated that a person shot at might be more likely to tell the truth. This common-sense observation, despite the artful use of first-person, did not suggest that the prosecutor had any special knowledge regarding the witness's credibility. The state court reasonably rejected this allegation of misconduct.

Petitioner next argues that the prosecution argued facts not in evidence by stating that Petitioner knew the victim had identified him at the time he left the state. It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id*. Here, the prosecution stated that, during the same month that a witness identified Petitioner as the shooter, Petitioner abruptly moved to Seattle.  The suggestion that Petitioner had found out about his identification was a reasonable inference based on the evidence presented. Similarly, the prosecutor's comments regarding the surviving victim's testimony about the shooting and his fellow passenger's conduct on the street were reasonable inferences supported by testimony and the other evidence presented at trial.

Petitioner also asserts that the prosecutor improperly bolstered the testimony of the key witness by stating that the more times a person tells a story, the more details emerge. "Improper

bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.'" *United States v. Ross*, 703 F.3d 856, 875-76 (6th Cir. 2012) (quoting *Passino v. Tessmer*, 61 F. App'x 124, 126 (6th Cir. 2003)). Here, the prosecutor was responding to defense counsel's argument that the witness was not to be believed because he added details to his earlier statements during his testimony. The prosecutor's response did not imply that the witness's testimony was corroborated by secret evidence, nor was it otherwise improper. It called on the jury to refer to their own common sense.

Petitioner next argues that the prosecution impermissibly attempted to denigrate the defense's case. Although an attorney must not be permitted to make unfounded and inflammatory attacks on an opposing advocate, a prosecutor's statements in closing argument regarding defense counsel must be viewed in context. *United States v. Catlett*, 97 F. 3d 565, 572 (D.C. Cir. 1996); *Makidon v. Elo*, 2000 WL 791795, * 8 (E.D. Mich. May 26, 2000). Although prosecutorial attacks on the credibility or motives of defense counsel are not permitted, the prosecutor has the right to comment on a defense counsel's argument during summation. *Mickens v. United States*, 53 F. Supp. 2d 326, 332 (E.D.N.Y. 1999). In the present case, the prosecutor's comments were not improper, because when viewed in context, they attacked defense counsel's arguments, not defense counsel personally. *See United States v. Xiong*, 262 F. 3d 672, 675 (7th Cir. 2001); *United States v. McCarter*, 307 F. Supp. 2d 991, 996 (N.D. Ill. 2004). Defense counsel attacked the credibility of the police, and suggested that an officer framed Petitioner. The prosecutor characterized this argument as being "illogical." This type of response is a far cry from the type of argument that constitutes improper denigration.

Finally, Petitioner asserts that the prosecutor shifted the burden of proof. The prosecution during its rebuttal argument questioned why defense counsel had failed to question officers whether

the key witness identified the perpetrator at the scene. To the extent this tactic suggested that Petitioner was required to establish the witness's dishonesty, any prejudice was sufficiently cured by the trial court's instruction that attorney statements and arguments are not evidence, and that the prosecution bears the burden of proof. Jurors are presumed to follow a court's instructions. See *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Considering the extensive state court analysis of Petitioner's prosecutorial misconduct claims, Petitioner fails to establish that the state court determination rejecting his prosecutorial misconduct claims were contrary to, or an unreasonable application of, established United States Supreme Court law. Accordingly, Petitioner is not entitled to habeas relief based on his prosecutorial misconduct claims.

Accordingly, the petition will be denied.

## CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

Conclusion

Accordingly, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that permission to proceed *in forma pauperis* on appeal is DENIED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Judge

Dated:  July 17, 2014